Per Curiam..
This bill was filed in the circuit court of Attala county by W. E. Pugh, to vacate a sale made by the sheriff of two lots in the town of Kosciusko, and to have the deed delivered up to be cancelled.
It is alleged that on the 27th of March, 1839, John S. Simmons recovered a judgment against James R. Winn et al.; that *423 .execution issued which was levied on the two lots in question, and also on certain personal property; that at the sheriff’s sale Foster purchased one lot for $5, and the other for $10, and was also the purchaser of most of the other property; that this sale was made for the benefit of Winn, or to shield his property from his creditors; that Winn was permitted to control the execution for that purpose; that Foster paid nothing, or, if he did, it Avas either the money of Winn, or the amount has been settled by Winn since the sale, and that if the execution creditor received the amount of the bids, it was paid to him by Winn, who has exercised acts of ownership over the property since by renting it.
It seems that in 1841, Pugh and Hunter recovered two judgments against Winn, and had their execution levied on the two lots, which were sold on the 11th of April, 1842, when Pugh became the purchaser, and also received a deed.
It appears that Foster was the attorney who recovered the judgment for Simmons, and that Simmons afterwards transferred the judgment to Wilson, who should' have been a party to this suit.
At the time the lots in controversy Avere sold, two others were also sold, as well as personal property. In regard to the personal property, it seems that Winn continued in possession, and took it from the state with him; but in regard to the lots, the acts of oAvnership by Winn are not so well established. One witness says, that after the sheriff’s sale he heard Winn say he had sold lot thirty-one to Short, and Avas to receive payment in cattle, and he afterwards saAV Winn with cattle, said to have been received of Short. ■ He had heard conversations between Winn and Short in regard to the sale of the lot, in which occasional allusions were made to Foster in relation to title. The witness had applied to Winn for the use of the house on this lot, who spoke of charging him rent, and referred him to Foster, who, when applied to, asked the witness if he had spoken to Winn on the subject, and on being answered in the affirmative, gave the witness permission to occupy it. Winn had also claimed rent of this same Avitness, as the administrator of the former *424 tenant, up to the 1st of May, which was after the sale. Cade, another witness, says that he knows of no act of ownership by Winn, except that he claimed rent after the sale. The other witnesses do not speak of Winn’s exercising acts of ownership over the lots, the most of the testimony having reference only to the personal property. It does not appear that Winn continued in possession of the lots, or that Foster was ever present at conversations in reference to them; or ever acknowledged or admit-' ted a right in Winn, further than is above stated. Groves, the agent of Foster, says that he has rented the lot eighty for Foster since he left the state, and has sold both, (eighty and one hundred and one,) and received the money for Foster.
The proof that Winn retained possession of the personal property was intended to establish fraud as to that, and thus to raise the presumption of fraud as to the lots also. But there is a distinction between public and private sales. In the case of Garland v. Chambers, 11 S. & M. 337, we held that it was not prima facie evidence of fraud to permit personal property, which had been purchased under a deed of trust, to remain in possession of the former owner. The circumstance of Winn’s subsequent possession of the personal property, is not evidence of fraud as regards the lots. The proof is rather unsatisfactory as to any act with regard to the lots that would certainly indicate fraud. The claiming of rent is not such an act, because the sheriff, in selling land, does not give possession. But there is an absence of proof as to any act of- Foster’s that would prove fraud; he never recognized Winn’s pretensions or claim of ownership, and has since sold the lots. True, the price for which he purchased was small, but the value of the lots is ■not shown. Besides, mere inadequacy of price is not necessarily evidence of fraud. Yery gross inadequacy may be so under certain circumstances. Nor was it evidence of fraud, that Foster did not pay the money bid by him. He was the attorney' who had recovered the judgment, and his client does not complain. If Wilson, the owner of the judgment, had been made a party, he could have stated whether as to him the sale was fraudulent. Whilst it is true that there are some circumstances *425 calculated to excite suspicions, that there was some understanding between Foster and Winn, yet the proof is not sufficient to justify us in declaring the sale void. There may have been an understanding between them, and still the sale may have been valid. There is no proof of unfairness in the sale by an effort to keep off bidders, or to make the property sell at a low price. It is possible that a jury might find differently. There is a remedy at law, if the party should choose to pursue it, when the question of fraud can be better investigated. We, therefore, reverse the decree, and dismiss the bill without prejudice to the remedy at law..
Decree reversed, and bill dismissed.